May call the next case. 16-1155, Daniel Moody v. Michigan Gaming Control Board et al. Oral argument not to exceed 15 minutes per side. Mr. Davis Jr. for the Plaintiff Appellant. Please the court shall I proceed? Yes. You did reserve some time to rebuttal. I did. Five minutes. Okay. Thank you. This is a continuation of a saga which has been to this court before and is now back before this court again. In John Moody's case, after the remand by this court, the district court dismissed the case again. It's been appealed again and that's for the future. This case involves what happened to John Moody's son during the time that his father was actively criticizing the Michigan Gaming Control Board, threatening to sue them and then finally suing them in the case which came before this court. John and Dan Moody are at least second and third generation horsemen who live on a family farm and who basically know no other occupation. Your client, Dan Moody, he settled with the state authorities, right? And he's back in business as a trainer? Yes, he is. We resolved that matter at the administrative hearing in September 2012 and he has been back and been acting as a horse trainer since that time. Does that make this case moot at all? No, because the essence of this case, there was a plenary complaint filed in the district court, but the district court ruled on First Amendment third party retaliation, which is pretty much the only issue in this case. The due process violations and other violations that might attend his suspension, even though he's now reinstated, still exist, but the third party retaliation is the only basis on which the court decided that the entire case should be dismissed and the court apparently made that determination because in the father's case, he attempted to amend the complaint to add the First Amendment retaliation against his son, which was denied by the district court, not on its merits, but on the claim that it was untimely. I obviously didn't want two lawsuits. I'd rather have had the one. And I don't mind if those two get consolidated, but the issue was I had to file the second case when I was denied amendment in the district court and the only issue on which the case was dismissed was third party First Amendment retaliation, which is the only issue in this case. What's your best case that you're going on here that shows that you're entitled to relief? Atkins. Atkins v. Board of Education. This case, this court in 1993 ruled that a wife fired because of her husband's activities from public employment, had a right to bring a third party retaliation case. Soured v. Loudoun County. This court in 2000 made the same ruling with regard to a wife fired because of her husband's activities. There have been two or three Southern District of Ohio cases which involve husband and wife. You know, that sort of intimate relationship, but Atkins and Loudoun or Soured v. Loudoun County are the precedent on which we rely. I just want to know what your best case is. You've got two or three best cases. Those are the two, Your Honor. The standard is pretty clear. There has to be an injury to the plaintiff. Here, he was suspended from his lawful occupation. Second, there has to be a close relationship to the third party. Here, it's father and son. And there are cases which involve fathers and sons. And then there has to be a hindrance to the third party's ability to sue. And that's the heart of this case. Because I tried to amend John Moody's complaint in the district court and was denied, the defense claims that John Moody could have represented Dan Moody's interests and therefore Dan Moody doesn't have standing to bring a third party retaliation case. Well, if your motion for John Moody had been more timely, you could have proceeded in that case, right? On that claim. Might have been, but if I'm within the statute of limitations, then the fact that I didn't file it as fast as the district court might have wanted doesn't extinguish the claim. But that would seem to be an argument you would make in an appeal in that other lawsuit. That is, if the judge ruled you were untimely and you really weren't, that's a matter to appeal there. But being untimely isn't a hindrance. He could have filed it. And if you win the appeal, then, of course, it would go forward showing that he could raise it himself. Judge Boggs, I look forward to briefing that. The briefing schedule has been set and will start in March. This cup may pass from me, we'll see. And so it may well be that this case is mooted out. But for now, my client has to have a cause of action somewhere, and when I got denied on my motion. When you say he has to have a cause of action somewhere, if the legal standard is correct, no third party standing unless the first party is, in fact, hindered, there are a lot of types of law where you're not hindered just because you lose, right? I mean, 2241 versus 2255, you say, do you have another remedy? If you've lost on the other remedy, it doesn't mean you didn't have another remedy. Well... Isn't that really the problem here? I don't think it's a problem. As one of my favorite judges says, sometimes you wear a belt and suspender too. I could say, I'll just rely on my appeal in John Moody's case and waive my client's right to an independent action, and I don't think that's good lawyering, Your Honor. And therefore, I hope they end up as one case, but I can't count on that. And the hindrance to John Moody is clear. He tried to bring his son into his case, and he was denied. And after that, if Daniel Moody was going to preserve his rights, this suit had to be filed, and I think that he fits all, therefore, all of the standards of third party standing and elements of the claim under Camacho v. Brandon, the Supreme Court case Campbell v. Louisiana, and the Supreme Court case of Powers v. Ohio. That being the case, we're here, and we think that we have set forth the law as it applies. I'd be pleased to respond to any questions the court might have. You're not claiming that this state administrative board that controls harness racing didn't have the authority to suspend John or the son, Daniel, right? You mean the technical authority, or they ruled? Yeah, well, they're right. There's a racing board, I guess, in every state that has racing, and they control who gets suspended because they've given the horse the wrong medicine or something like that. You don't have any question about their authority to do that, do you? I have no question about their authority. I just think that they were wrong in this case, and that's a part of the underlying case. But what the usual remedy is to go to the state courts and say they didn't have authority and so forth. You didn't do that in this case, did you, or even in John's case? No, we did. We filed our administrative appeal, and that was how Dan got reinstated. When we got to the hearing on the administrative appeal, the attorney general conceded and reinstated him without condition. Okay. So you got relief in the state court, although he had to have a period of suspension. Right. He was off somewhere between five and nine months, depending on how you read the record. Thank you. Okay. Thank you, Mr. Davis. You'll have your rebuttal time. Good morning. May it please the Court. Assistant Attorney General Thomas Nafso on behalf of the appellees. In this matter, there is no cause of action. The appellant in this case has no standing to assert the constitutional rights of his father. As discussed, the appellant would have to show that there was some hindrance in the third party's ability to assert a claim. What's your best case? You have a best case? Yeah, I have a best case. My best case is the line of cases from the Second Circuit, Lewis v. City of New York, which is directly on point, with this case where, in that case, the plaintiff's son's mother spoke out against police officers, and the Court found in the Second Circuit that there was no standing because, for one, there was no Article III standing, no injury in fact to the third party. And the Court went a step further there and said, even if there was an injury in fact to the third party, there was no hindrance because there was no showing that the mother of the child would be unwilling to bring the claim or couldn't bring the claim herself, which is directly on point with the case here. In fact, in this case, John Moody was not only willing to bring the claim, he did bring the claim, and as Judge Boggs has pointed out, just because the claim was denied or brought untimely doesn't amount to a hindrance. I'd also note that there's another Second Circuit case, Huth, it's a 2010 case, which looks at Camacho, which was cited by the appellant, and that case indicates that what's underlying in the Camacho case is that the third party must have a constitutional claim in their own rights. The third party would have to have an injury in fact, and that doesn't exist in this matter. In addition, the appellant has cited the Atkins line of cases, which is his best authority, and that case does not help the appellant's position. The Atkins line of cases are familial association claims. It is the person who is asserting the right is the person that's alleging that they were injured for a violation of that individual's, the plaintiff's individual's familial association, which is different than the claim in this case, because in this case the plaintiff is alleging an injury where the speech is by the third party. I'd also note that... He does claim an injury because he got suspended for seven months or something like that, right? Correct. The litigant, the plaintiff does claim an injury here, but not based on his own speech, based on his father's alleged speech. They're doing it as punishment for his father's violent suit or whatever he did. That's what he's saying, right? Well, that's what he's saying, but the issue here I think is whether or not he would have standing to even bring that claim, and if the third party didn't have an injury, then the plaintiff can't bring, the claim can't be brought. In addition, if the plaintiff hasn't asserted that the third party was hindered in bringing the claim, then there can be no claim. Circling back to those familial association claims, one, in the complaint, this wasn't alleged as a familial association claim. It's a separate cause of action with a different element, which is that there's an undue intrusion into the familial relationship between the family members. That was an important point in the Adkins case that we don't have in this case. There's been no allegation, and even on appeal in the appellate briefs, there's been no allegation that the defendant appellees in this case attempted to unduly intrude into the relationship between the plaintiff's son and the third party father. That entire line of cases requires a showing of an undue intrusion here. That element can't simply be substituted into a third party retaliation claim. Those cases, Adkins all the way down, are not third party retaliation cases. They are familial association claims. In addition, in this circuit, as well as the Supreme Court, there's no authority establishing that the plaintiff, Dan Moody, has a right to assert the constitutional rights of his father in a third party retaliation case. It's not clearly established in this circuit, and for those reasons, the appellees would be entitled to qualified immunity either way in this matter. I'd also note that three of the appellee defendants are stewards, and they would be entitled to quasi-judicial immunity because their proceedings are functionally comparable to that of judges. They call witnesses, swear them in, receive evidence like a judge. Are you saying that if Daniel had put in his complaint that this problem involved a familial relationship as the Adkins case, then he would have had standing? No, I'm not saying that because he still never alleged that there was an undue intrusion into the familial relationship between he, Daniel, and his father. In those familial association cases, they require a showing of an undue intrusion. Well, he could have alleged that. If he said that, he could have stayed in the case, huh? That's an allegation, of course, but it's... Well, and depending... I don't know that I necessarily would say that he could stay in the case, but I could say that if he hasn't alleged it, then it fails. Yeah, if he doesn't allege an undue intrusion into the relationship, then it would fail. Because one of the problems that he had with the commission was that he had his father out there working on the farm and taking care of horses, and they didn't want his father to be involved in racing it off, right? That's what they went to investigate for because the father was suspended and they received a tip at the time that the father may have been training horses, which was viewed as a violation of the father's suspension. And so that's how the investigation commenced. I'm just going to review my notes for one moment here. If I don't have any other questions, I have nothing further. Okay. Thank you, Counsel. Thank you. Mr. Davis, you have rebuttal time. Yes, please. In the order that it was argued by the defendants, the Huth case, on which he relies, regarding lack of standing not being a hindrance, a close reading of that case shows that the court never ruled on that issue in Huth. And Huth cited to Lewis v. City of New York, neither did that case rule on the issue of lack of standing not being a hindrance. Regardless, if their argument is there's no such thing as standing for third-party First Amendment retaliation, then the decisions in this court are directly contrary to that, and Huth is not a Sixth Circuit case. Regarding the father's ability to protect the son's interest, he tried, and he was denied on non-substantive grounds. I understand what you said, Judge Boggs, but the fact of the matter is, the father acted in as much good faith as he could, and he was denied. At that point, the son, in order to protect himself, had to act. And there isn't any doubt that the son is asserting his rights. He suffered an injury, in fact. He was suspended, and he was investigated. We don't complain that Defendant Lesnow or Defendant Ernst or others wanted to be assured that John Moody was not violating the terms of his suspension and exclusion. They had a right to do that, and we didn't resist it. We indicated John Moody is working as a farmhand. He doesn't have anything to do with horses that are scheduled to race. Completely separate. They had liked to expand the exclusion to mean he can't be around horses at all, which would mean that he would have to move. The exclusion specifically say you can't be on the association grounds. He can act as a stable hand. What about this issue of the close familial relationship that Mr. Nafso just addressed? You're not alleging that a close familial relationship alone creates standing here, do you? You're not alleging that that alone would create standing in this case? No. I mean, the standing is independent because of the injury, in fact. Would it have been a more interesting case or could I have pled a familial relationship case? Yes. Would it have enhanced judicial economy or the actual relief and the actual injuries? John Moody and his father never suffered an impairment to their familial relationship. They live on the same farm and have. Thank you. Okay. Thank you, counsel, for your arguments this morning. We certainly appreciate them. The case will be submitted.